COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

MARK ADAM LOVELL,                                    )

                                                                              )               No.  08-02-00112-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
142nd District Court

THE STATE OF TEXAS,                                     )

                                                                              )          
of Midland County, Texas

Appellee.                           )

                                                                              )                   (TC# CR-26609)

                                                                              )

 

 

O
P I N I O N

 








Appellant Mark
Adam Lovell was indicted on two counts of aggravated assault, enhanced by two
prior felony convictions.  The jury found
Appellant guilty of aggravated assault as charged in Count I of the indictment
and guilty of the lesser-included offense of assault as to Count II.  See Tex.Pen.Code Ann. ''
22.01(a), 22.02(a)(2)(Vernon Supp. 2004).  Based on the jury=s
verdict, the trial court made an affirmative deadly weapon finding as to the
aggravated assault offense, found the enhancement paragraphs to be true, and
sentenced Appellant to 35 years=
imprisonment at the Institutional Division of the Texas Department of Criminal
Justice for the offense of aggravated assault with a deadly weapon.  The trial court sentenced Appellant to one
year in the Midland County Jail for the lesser included offense of assault in
Count II.  On appeal, Appellant raises
eight issues for review in which he challenges the sufficiency of the evidence
to sustain his conviction for aggravated assault, asserts ineffective
assistance of counsel claims, a double jeopardy claim, and contends the trial
court erred in admitting evidence of his purported gang involvement.[1]  We affirm.

FACTUAL
SUMMARY

On the night of
January 18, 2001, the victim, Juan Rodriguez, was visiting his girlfriend
Jessica Vasquez, at her apartment in Midland, Texas.  He and Ms. Vasquez were sitting at the dining
room table and Ms. Vasquez=s
roommate Ms. Charisa Campbell was in the kitchen when
there were two knocks on the door. 
Appellant, Ms. Vasquez=s
ex-boyfriend unexpectedly walked into the apartment.  Appellant was very drunk and was carrying a
bottle of liquor.  He then took off his
shirt and was verbally abusive to Ms. Vasquez and Mr. Rodriguez.

After a time,
three more people entered the apartment, Russell Stuteville,
Larry Wren, and Teresa Yarbrough, Appellant=s
wife.  Appellant and his friends started
giving each other hugs and Appellant told Mr. Stuteville
Athis guy over here wants to box,@ referring to Mr. Rodriguez.  Appellant then starting
naming ranks, calling one of the guys his sergeant at arms or soldier and the
other his major in the AAC@ or Aryan Circle.  Appellant and friends taunted Mr. Rodriguez
to go outside, saying Awe
can do this one-on-one and nobody would jump in, it would just be fun, we just
come here to party, let=s
drink, let=s drink.@ 
Mr. Rodriguez said no and told them they needed to leave.








Appellant, Wren,
and Stuteville began punching and kicking Mr.
Rodriguez.  Ms. Vasquez and Ms.
Campbell both testified that Mr. Stuteville hit Mr.
Rodriguez on the head with a VCR.  He was
also struck with a cordless phone.  The
melee continued until Mr. Rodriguez hit Appellant in the mouth and
Appellant and the others left the apartment and walked away.

After Appellant
and the others left, the police and an ambulance arrived.  Mr. Rodriguez=s
injuries included a gash over his left eye that required five stitches,
bruising on his left cheek and ear, a gash on his head, and a gash on the
bridge of his nose that required three stitches.  Mr. Rodriguez also had numerous lumps on
his head.  He testified that during the
attack, he was scared and feared for his life.

Officer Ray Leible of the Midland Police Department was dispatched to
the apartment to investigate the incident. 
Officer Leible testified that hitting and
kicking somebody who was down could cause serious bodily injury or death.  According to Officer Leible,
if somebody used a VCR to hit someone over the head, that
type of force was capable of causing serious bodily injury or death.  In his opinion, Officer Leible
considered a cut above the eye requiring five stitches and a cut on the bridge
of the nose requiring three stitches bodily injury, but not serious bodily
injury.  Upon examining a photograph of a
laceration on Mr. Rodriguez=s
head, Officer Leible stated that the injury was
consistent with something with an edge striking his head.








Defense witness
Teresa Yarbrough, Appellant=s
wife, testified that on January 18, 2001, she and Appellant had an argument at
the 7-11 and afterwards he drove off and went over to Ms. Campbell=s apartment.  Russell Stuteville
and Larry Wren came by and they all went to Ms. Campbell=s
apartment.  Ms. Yarbrough knocked on the
door and Ms. Campbell opened the door and let them in.  Ms. Yarbrough saw Appellant and Rodriguez
standing there talking and laughing.  Ms.
Vasquez told her that Appellant was there to be with Ms. Campbell.  At that point, everyone started arguing and
Appellant was trying to calm everybody down. 
Mr. Stuteville then reached around and
hit Mr. Rodriguez.  Ms. Yarbrough
recalled that Appellant ran over and tried to separate them.  Ms. Yarbrough claimed that the other men were
swinging at each other and Appellant was simply on the bottom of the pile and
she did not recall seeing Appellant kick anyone.  Then, someone threw a whisky bottle and after
that, Appellant got up and left.  She
testified that it was Mr. Stuteville who hit Mr.
Rodriguez on the head with a VCR, breaking the VCR.  According to Ms. Yarbrough, Appellant was
already gone when Mr. Rodriguez was hit with the VCR.  Ms. Yarbrough testified that there was no
plan to go there and beat up Ms. Vasquez and Mr. Rodriguez,
that she did not talk to Appellant about going to the apartment, and
Appellant did not know Mr. Stuteville and Mr. Wren
were coming over.

Sufficiency
of the Evidence

In Issues One
through Three, Appellant challenges the legal and factual sufficiency to
sustain his conviction for aggravated assault with a deadly weapon.  Specifically, Appellant attacks the
sufficiency of the evidence to show he acted as a party and that the VCR was a
deadly weapon.  

Standards
of Review








In reviewing the
legal sufficiency of the evidence, we must view the evidence in the light most
favorable to the verdict to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781,
2788-89, 61 L.Ed.2d 560 (1979); Lacour v.
State, 8 S.W.3d 670, 671 (Tex.Crim.App. 2000).  We measure the legal sufficiency of the
evidence by the elements of the offense as defined by a hypothetically correct
jury charge for the case.  Malik
v. State, 953 S.W.2d 234, 240 (Tex.Crim.App.
1997).  This hypothetical charge
would set out the law, be authorized by the indictment, not unnecessarily
increase the State=s burden
of proof or unnecessarily restrict the State=s
theories of liability, and adequately describe the particular offense for which
the defendant was tried.  Id.  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact.  See Adelman v.
State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson
v. State, 819 S.W.2d 839, 843 (Tex.Crim.App.
1991).  Rather, our duty is to determine
whether if both the explicit and implicit findings of the trier
of fact are rational by viewing all the evidence admitted at trial in the light
most favorable to the verdict.  See Adelman, 828 S.W.2d at 421-22.  In so doing, any inconsistencies in the
evidence are resolved in favor of the verdict. 
Matson, 819 S.W.2d at 843.








In reviewing the
factual sufficiency of the evidence, we view all the evidence in a neutral
light, both for and against the verdict, to determine whether it demonstrates
that the proof of guilt is so obviously weak as to undermine our confidence in
the jury=s
determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.  Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App.
2000); Clewis v. State, 922 S.W.2d 126,
134 (Tex.Crim.App. 1996).  We review the evidence supporting a fact in
dispute and compare it to evidence tending to disprove that fact.  Johnson, 23 S.W.3d at 6-7; Jones v.
State, 944 S.W.2d 642, 647 (Tex.Crim.App. 1996), cert.
denied, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d
54 (1997).  Although we are authorized to
disagree with the jury=s
determination, we must give due deference to the jury=s
assessment of the weight and credibility of the evidence to avoid substituting
our judgment for that of the fact finder. 
Johnson, 23 S.W.3d at 8-9; Jones,
944 S.W.2d at 648.  We will set aside a
verdict only where the evidence supporting guilt is so obviously weak or the
contrary evidence so overwhelmingly outweighs the support evidence as to render
the conviction clearly wrong and manifestly unjust.  Ortiz v. State, 93 S.W.3d 79, 87 (Tex.Crim.App. 2002), cert. denied, 123 S.Ct. 1901, 155 L.Ed.2d 824 (2003).

Aggravated
Assault

A person commits
the offense of assault if the person intentionally, knowingly, or recklessly
causes bodily injury to another.  See
Tex.Pen.Code Ann. '
22.01(a)(1). 
Aggravated assault occurs if a person commits assault as defined in
Section 22.01 and the person uses or exhibits a deadly weapon during the
commission of the assault.  See Tex.Pen.Code Ann. ' 22.02(a)(2).  A deadly weapon
is defined as anything that in the manner of its use or intended use is capable
of causing death or serious bodily injury. 
See Tex.Pen.Code Ann. ' 1.07(a)(17)(B)(Vernon Supp. 2004).








We turn first to
Appellant=s
contention concerning the use of the VCR as a deadly weapon in this case.  Appellant asserts that there is legally and
factually insufficient evidence that Mr. Stuteville=s use of the VCR to hit Mr. Rodriguez
on the head constituted use of a deadly weapon. 
Appellant argues that there was no evidence of how hard Mr. Rodriguez
was hit with the VCR, no testimony from a medical professional, and Mr.
Rodriguez suffered only a minor cut, which did not require any stitches.  An object is a deadly weapon when it is
actually used in a manner which causes, or has the potential to cause death or
serious bodily injury.  See Tex.Pen.Code Ann. '
1.07(a)(17)(B); Hill v. State, 913 S.W.2d 581,
591 (Tex.Crim.App. 1996) (Baird, J., concurring and
dissenting); Powell v. State, 939 S.W.2d 713, 717 (Tex.App.--El
Paso 1997, no pet.).  Serious bodily
injury is defined as Abodily
injury that creates a substantial risk of death or that causes death, serious
permanent disfigurement, or protracted loss or impairment of the function of
any bodily member or organ.@  Tex.Pen.Code
Ann. ' 1.07(a)(46).  In this case,
the State was required to show beyond a reasonable doubt that the VCR, in the
manner of its use, was capable of causing death or serious bodily injury.  Therefore, the State was not required to show
Mr. Rodriguez actually suffered serious bodily injury, but rather, in the
manner of its use, the VCR was capable of causing death or serious bodily
injury to Mr. Rodriguez.  See McCain
v. State, 22 S.W.3d 497, 503 (Tex.Crim.App.
2000); Clark v. State, 886 S.W.2d 844, 845 (Tex.App.--Eastland
1994, no pet.).  

Here, witnesses
testified that Mr. Stuteville hit Mr. Rodriguez on
the head with a VCR, causing the VCR to break. 
Officer Raymond Leible testified that using a
VCR to hit someone over the head was the type of force capable of causing
serious bodily injury or death.  After
examining a photograph of the laceration on Mr. Rodriguez=s head, Officer Leible
stated that the injury was consistent with being struck on the head by
something with an edge.  Viewing the
facts in a light most favorable to the verdict, we conclude that the evidence
was legally sufficient to support the jury=s
implicit finding that of the VCR in this case was a deadly weapon.  Further, after reviewing all the evidence, we
conclude that the finding is also supported by factually sufficient evidence.








Within Appellant=s first three issues, he also contends
there is insufficient evidence to support his conviction as a party to the
offense of aggravated assault with a deadly weapon.  Under the law of parties, a person is
criminally responsible for an offense committed by the conduct of another if,
acting with an intent to promote or assist in the
commission of the offense, he solicits, encourages, directs, aids, or attempts
to aid the other person to commit the offense. 
See Tex.Pen.Code Ann. '
7.02(a)(2).  To
establish this theory of liability, the State must prove the illegal conduct of
the primary actor and that the accused acted with the intent to promote or
assist the commission of the offense.  Stroman
v. State, 69 S.W.3d 325, 329 (Tex.App.--Texarkana
2002, pet. ref=d).  In evaluating whether a defendant is a party
to an offense, the court may examine the events occurring before, during, or
after the offense is committed and may rely on the defendant=s actions showing an understanding and
common design to commit the offense.  See
Marable v. State, 85 S.W.3d 287, 293 (Tex.Crim.App. 2002); Ransom v. State, 920 S.W.2d
288, 302 (Tex.Crim.App. 1996), cert. denied,
519 U.S. 1030, 117 S.Ct. 587, 136 L.Ed.2d 516
(1996).  Mere presence at the scene of a
crime does not implicate an individual as a party.  However, participation in a criminal offense
may be inferred from the circumstances.  Beardsley v. State, 738 S.W.2d 681, 684 (Tex.Crim.App.
1987).  In this case, Appellant
was not indicted as a party to the offense of aggravated assault,
however, the jury=s
instructions and the application paragraph of the charge included the law of
parties liability theory.  

With respect to
the aggravated assault conviction, evidence at trial showed that when Mr. Stuteville and Mr. Wren arrived at the apartment, Appellant
greeted them with hugs and told Mr. Stuteville that
Mr. Rodriguez wanted to box.  Mr.
Rodriguez told them to leave.  The
altercation began when Appellant grabbed Mr. Rodriguez by the shoulder.  Appellant, Mr. Stuteville,
and Mr. Wren hit and kicked Mr. Rodriguez all over his body.  During the fighting, Mr. Rodriguez heard
Appellant say, Ayou=re going down.@  During the brawl, Appellant was choking Mr.
Rodriguez and lifting him so that the others could kick him in the face.  Ms. Vasquez and Ms. Campbell observed
Appellant choking Mr. Rodriguez while Mr. Stuteville
hit Mr. Rodriguez on the head with a VCR, which broke.  The beating continued for about three more
minutes before Mr. Rodriguez managed to break Appellant=s
grip.  








From Appellant=s conduct and words during the beating,
the jury could reasonably infer that Appellant acted as a party to the offense
of aggravated assault with a deadly weapon as committed by Mr. Stuteville, the primary actor.  During the incident, Appellant encouraged the
commission of the offense by his words and aided or attempted to aid Mr. Wren
by choking Mr. Rodriguez, which rendered Mr. Rodriguez immobile during Mr.
Stuteville=s
attack with the VCR.  From evidence
presented at trial, the jury could have inferred that the parties= agreement or common design to commit
the offense was formed contemporaneously with the criminal act.  See Beier
v. State, 687 S.W.2d 2, 3-4 (Tex.Crim.App.
1985).  Moreover, evidence in this
case shows that Appellant continued to assault Mr. Rodriguez after Mr. Stuteville hit Mr. Rodriguez with the VCR, conduct which
supports the jury=s
conclusion that Appellant participated as a party to the offense.  Viewing the evidence in the light most
favorable to the verdict, we conclude the evidence was legally sufficient to
sustain Appellant=s
conviction for aggravated assault with a deadly weapon as a party to the
offense.

In his factually
sufficiency challenge, Appellant directs our attention to evidence that shows
he arrived alone and drunk, had started to leave when the codefendants showed
up, and did not join the fight until he was shoved by Mr. Rodriguez.  We also observe that according to Ms.
Yarbrough=s
testimony, Appellant attempted to separate the fighting parties, became
entangled in the fighting, and had already left before Mr. Stuteville
hit Mr. Rodriguez with the VCR.  After
reviewing all the evidence, however, we conclude that it was factually
sufficient to sustain Appellant=s
conviction as the evidence supporting guilt is not so obviously weak nor overwhelmingly outweighed by contrary evidence as to
render the conviction clearly wrong and manifestly unjust.  See Ortiz, 93 S.W.3d
at 87.  Issues One through Three are overruled.








Double
Jeopardy

In Issue Five,
Appellant argues that his convictions for two assaults
against the same person in the same transaction clearly violates his
guarantee against double jeopardy under the Fifth Amendment.  The double jeopardy clause of the Fifth
Amendment to the United States Constitution provides that no person shall Abe subject for the same offense to be
twice put in jeopardy of life or limb.@  See U.S.
Const. amend. V.  This
constitutional provision is applicable to the states through the Fourteenth
Amendment.  See,
e.g., Brown v. Ohio, 432 U.S. 161, 164, 97 S.Ct.
2221, 2225, 53 L.Ed.2d 187 (1977). 
The Fifth Amendment protection against double jeopardy includes
protection from multiple punishments for the same offense.  Illinois v. Vitale,
447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d
228 (1980); Cervantes v. State, 815 S.W.2d 569, 572 (Tex.Crim.App.
1991).

Appellant did not
raise the issue of double jeopardy in the trial court.  See Tex.R.App.P. 33.1(a).  Appellant has the burden to preserve in some
fashion, a double jeopardy objection at or before the time the charge is
submitted to the jury.  Gonzalez v. State, 8 S.W.3d 640, 642 (Tex.Crim.App.
2000).  However, in limited
circumstances, Appellant may raise a double jeopardy claim for the first time
on appeal when:  (1) the undisputed facts
show the double jeopardy violation is clearly apparent on the face of the
record; and (2) enforcement of the usual procedural default rules serve no
legitimate state interests.  Id. at 643. 
Both prongs must be satisfied to raise a double jeopardy claim for the
first time on appeal.  Murray
v. State, 24 S.W.3d 881, 888-89 (Tex.App.--Waco
2000, pet. ref=d).









In this case,
Appellant was indicted with aggravated assault against Juan Rodriguez with a
deadly weapon, to wit:  a VCR in Count I
and with aggravated assault against Juan Rodriguez with a deadly weapon, to
wit:  his hands and feet in Count
II.  With respect to Count I, the jury
was instructed to find Appellant guilty of the offense of aggravated assault if
it believed from the evidence beyond a reasonable doubt that Appellant acted as
a party to the offense.  The jury found
Appellant guilty of Count I.  As to Count
II, the jury found Appellant not guilty of aggravated assault as charged, but
guilty of the lesser offense of assault. 
Witness testimony at trial revealed that codefendant Mr. Stuteville was the principal actor in the commission of the
offense of aggravated assault with a deadly weapon, the VCR, during the
criminal episode.  Appellant=s conviction under Count I as a party
was based on his participation in this distinct and separate offense.  Evidence in the record shows that Appellant=s conviction of assault as a lesser
included offense of Count II was not based on the same conduct underlying his
conviction for aggravated assault in Count I. 
Therefore, a double jeopardy violation is not clearly apparent on the
face of the record.  We find that
Appellant has waived any double jeopardy error by failing to present a record
on appeal showing on its face any multiple punishments violation.  See Gonzalez, 8
S.W.3d at 645.  Issue Five is
overruled.

Ineffective
Assistance of Counsel

In Issues Four and
Six, Appellant contends he was denied effective assistance of counsel because
his trial counsel failed to object to the variance between the indictment and
the jury charge and failed to object to the violation of his right not to be
convicted twice for the same crime.








Claims of
ineffective assistance are reviewed under the two-pronged test set out by the
United States Supreme Court in Strickland v. Washington, 466 U.S. 668,
104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by
Texas in Hernandez v. State, 726 S.W.2d 53, 56-7 (Tex.Crim.App.
1986).  To prevail, the defendant must
show that trial counsel=s
performance was deficient, that is, counsel=s
representation fell below an objective standard of reasonableness.  Thompson v. State, 9
S.W.3d 808, 812 (Tex.Crim.App. 1999); Strickland,
466 U.S. at 687-88, 104 S.Ct. at 2064.  The defendant must also show that counsel=s deficient performance prejudiced his
defense.  Strickland,
466 U.S. at 687, 104 S.Ct. 2064; Jackson v. State,
877 S.W.2d 768, 771 (Tex.Crim.App. 1994).  This requires the defendant to show there is
a reasonable probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Strickland, 466 U.S.
at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d  at 771.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.  Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d
at 771.  It is the defendant=s burden to prove ineffective
assistance of counsel by a preponderance of the evidence.  Thompson, 9 S.W.3d
at 813.

In reviewing a
claim of ineffective assistance of counsel, we must indulge a strong
presumption that counsel=s
conduct falls within the wide range of reasonable professional assistance and
Appellant must overcome the presumption that the challenged conduct might be
considered sound trial strategy.  Thompson,
9 S.W.3d at 813. 
Any allegation of ineffectiveness must be firmly founded and
affirmatively demonstrated in the record to overcome this presumption.  Id.; see Jackson, 877 S.W.2d at
771.  In the majority of instances, this
task is extremely difficult because Athe
record on direct appeal is simply undeveloped and cannot adequately reflect the
failings of trial counsel.@  Thompson, 9 S.W.3d
at 813-14.  When faced with a
silent record as to counsel=s
strategy, we will not speculate as to the reasons for counsel=s actions.  See Jackson, 877
S.W.2d at 771. 








In this case,
Appellant did not file a motion for new trial to challenge the alleged
ineffectiveness of his counsel.  The
record before this Court does not contain trial counsel=s
explanations of the reasons for the inaction alleged as errors, therefore it
will be difficult for Appellant to rebut the strong presumption that trial
counsel=s conduct
falls within the wide range of reasonable professional assistance.  See Thompson, 9 S.W.3d. at 814.

Variance
Between Indictment and Jury Charge








In its indictment
for Count I, the State alleged that Appellant Adid
then and there intentionally, knowingly and recklessly cause bodily injury to
Juan Rodriguez by striking and hitting the said Juan Rodriguez with a VCR and
did then and there use and exhibit a deadly weapon, to wit:  a VCR, during the commission of the said assault.@ 
In the application paragraph for Count I in the jury charge, the jury
was instructed to find Appellant guilty if it found beyond a reasonable doubt
that Appellant acted as a party in holding Juan Rodriguez while the other
person or persons were Acausing
bodily injury to the said Juan Rodriguez with a VCR or with hands or feet@ and it further found beyond a
reasonable doubt Athat the
said other person or persons did then and there exhibit or use and exhibit a
deadly weapon, to wit:  a VCR or hands or
feet during the commission of said offense.@  The State concedes that application paragraph
was incorrect because Ahands
and feet@ was not
alleged as a deadly weapon in the indictment under Count I.[2]  As the State appropriately observes, a jury
charge must not enlarge the offense alleged and authorize the jury to convict
the defendant on a basis not alleged in the indictment.  See Castillo v. State,
7 S.W.3d 253, 258 (Tex.App.--Austin 1999, pet. ref=d), citing, Fella
v. State, 573 S.W.2d 548, 548 (Tex.Crim.App.
1978).

Assuming, without
deciding, that trial counsel=s
representation fell below an objective standard of reasonableness by failing to
object to the variance in the jury charge, Appellant must still show that his
counsel=s
deficient performance prejudiced his defense. 
See Strickland, 
466 U.S. at 687, 104 S.Ct. 2064; Jackson,
877 S.W.2d at 771.  Under the second
prong of Strickland, Appellant must show there is a reasonable
probability, that is, a probability sufficient to undermine confidence in the
outcome, that but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Strickland, 466 U.S.
at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d at 771.  

In his brief,
Appellant contends that this error on the part of trial counsel clearly made
the case for conviction clearly and significantly more persuasive.  At trial, Officer Leible
testified that whether there were three people or one person hitting and
kicking somebody who was down, that hitting and kicking could cause serious
bodily injury or death.  The State
prosecutor then asked, AAnd
in these circumstances if I told you that there were just one person on one,
the victim was down and somebody was kicking him when he was down, would that
kicking and that use of force or the hitting with the hand use of force be
capable of causing serious bodily injury or death?@  Officer Leible
stated that it would depend on the part of the body that was being struck, but
if the head, the throat, or other red target areas were struck, it can.  Officer Leible also
testified that if somebody was down on the ground and three people were hitting
and kicking them everywhere, that type of action is capable of causing serious
bodily injury or death.  In its closing
argument to the jury, the State argued:








Ladies and gentlemen,
I don=t think
there should be any doubt in your mind that this Defendant is guilty of
aggravated assault with a deadly weapon, to wit:  a VCR, as a party to this offense, because he
aided him by holding him [Mr. Rodriguez] down strangling him, and he also
encouraged them by saying, AGet
them, brother.  Get them, brother.@ 
Hands and feet obviously hadn=t done it, you got to do more.  It=s
not unconceivable [sic] that you start picking up stuff, and here comes the
VCR.  He aids them by encouraging them,
and he aids them by holding him down.

 

I urge you to vote
guilty on Count 1 as a party to the offense of aggravated assault with a deadly
weapon, to wit: a VCR.

 

Count 2, aggravated
assault with a deadly weapon, to wit: hands and feet.  When you have [a] man who=s balled up on the ground with three
guys hitting him and kicking him anywhere they can, that=s
not a misdemeanor assault.

 

There is little evidence in the
record to support Appellant=s
contention that the State obtained a conviction against Appellant as a party
under Count I based on a finding of Ahands
or feet@ as a
deadly weapon, rather than a AVCR@ as a deadly weapon as alleged in the
indictment.  Further, the State never
argued that Appellant was guilty under Count I for aggravated assault with a
deadly weapon, to wit:  hands or
feet.  We also observe that the jury
returned a general verdict, finding Appellant guilty of the offense of
Aggravated Assault Aas
charged in Count I of the indictment.@  Appellant has failed to show a reasonable
probability that the result of this proceeding would have been different if
trial counsel had objected to the variance in the jury charge.  Issue Four is overruled.

Double
Jeopardy








Appellant also
argues that his trial counsel was ineffective because counsel failed to object
to the violation of his right not to be convicted twice for the same
crime.  Specifically, Appellant contends
his counsel was deficient for failing to raise a double jeopardy bar to
prosecution for the two aggravated assault charges arising out of the same criminal
episode.  As discussed above, Appellant
was indicted with two aggravated assault charges, differing only in the deadly
weapon allegedly used or exhibited during the commission of each offense.  The jury found Appellant guilty of aggravated
assault with a deadly weapon under Count I and not guilty of aggravated assault
with a deadly weapon, but guilty of the lesser-included offense of assault as
to Count II.  Appellant fails to
demonstrate that a double jeopardy objection would have prevailed in this case.  Although one victim was assaulted, there was
sufficient evidence to show that Appellant committed two separate and distinct
assaults, one as a party to the aggravated assault against Mr. Rodriguez with
the VCR, and the second by committing the offense of assault by his own conduct
as a principal actor.  The jury=s general verdict for each count could
have been based on separate and distinguishable assaults.  Therefore, Appellant was not subjected to
multiple punishments for the same offense, but rather he was given two distinct
punishments for two separate criminal acts against the same victim.  From the record before us, we conclude that
counsel was not deficient for failing to raise a double jeopardy objection.  Issue Six is overruled.

Issues
Raised in Supplemental Briefing

Appellant filed a
motion in this cause, in which he requested leave of court to file a
supplemental brief containing additional points of error.  The Court granted Appellant=s request to file a supplemental
briefing.  Appellant raises two
additional issues for our review.  

Admission
of Evidence on Purported Gang Affiliation

In Issue One of
his supplemental brief, Appellant argues the trial court erred in admitting
testimony related to his purported gang involvement because this evidence was
irrelevant and highly prejudicial.  In
response, the State contends Appellant failed to preserve his objection to
admission of this evidence.  








During the
testimony of the State=s
first witness, Juan Rodriguez, the State prosecutor approached the bench and
informed the trial court that Mr. Rodriguez intended to testify that 

when
Appellant=s
codefendants entered the apartment Appellant said, AI=m AC, Aryan Circle@ and greeted his friends saying, AHey, this is my brother,@ and started naming ranks in the Aryan
Circle.  Appellant objected to this
expected testimony related to gang membership, arguing it was highly
prejudicial and having nothing to do with whether he was a party to a crime or
not.  The following exchange then
occurred concerning the trial court=s
ruling on the objection:

The
Court:                    [Defense
counsel], the Court=s ruling
is that the jury=s
entitled to hear and the State is entitled to present the evidence of what the
parties said, including the statements, whether they are true or not, regarding
the entire transaction. 

 

[Defense
counsel]:        All right, sir.

 

[State
prosecutor]:        Can I so inform the
witness, because I=ve instructed him to stay away from that?

 

[Defense
counsel]:        You=re not going -- this does not include
letting them go into being a prison gang or anything of that nature?

 

The
Court:                    It is not.  It is only as to what he said there and what
he did, not the status he held.  You
follow what I=m saying?

 

[State
prosecutor]:        Not like his rank?

 

The
Court:                    Yeah, in other
words, if -- I am not permitting the State to go into whether or not he is a
gang member, only to what he said in this transaction.  The jury=s
entitled to hear that.

 








[State
prosecutor]:        Right.  So to prevent another bench conference, the
third witness [Charisa Campbell] knows what Aryan
Circle is, and when he started saying >I=m AC,=
and it was scaring her, because she understood what that meant, I think her
state of mind in terms of what that meant to her --

 

[Defense
counsel]:        She=s not a victim in this case, Your
Honor.  She=s not a party to this lawsuit.

 

[State
prosecutor]:        It was her apartment
that got trashed all over the place.

 

The
Court:                    [Defense
counsel] is correct, she=s
not a victim and state of mind of someone who is not a victim, that=s a stretch to show how that would be
relevant, what she=s
thinking.

 

[State
prosecutor]:        Okay

 

[Defense
counsel]:        Note my exception.  You=re
overruling my Motion in Limine[3]
to a certain extent.  We
object.  Can I have a continuing
objection?

 

The
Court:                    Yes.

 

[Defense
counsel]:        Thank you.

 








Juan Rodriguez testified that when
Mr. Stuteville, Mr. Wren, and Ms. Yarbrough entered, Aall of them together,@ including Appellant, were talking and Amentioned about an AC, an Aryan when
they=re about
right here walking, that >AC=s in the house,=
or something like that.@  The State=s
second witness, Jessica Vasquez, testified that when they entered the
apartment, they met in the living room and started talking about Athis is my brother, this is my brother,@ and then they all moved into the
kitchen where Appellant started introducing Mr. Wren as his major and Mr. Stuteville Aas
something else in the Aryan Circle.@  Appellant did not raise an objection based on
the mention of purported gang affiliation. 
The State=s third witness,
Charisa Campbell, testified that when the others
showed up at the apartment, they met in the middle of the room and started
hugging each other and saying Amy
brother.@  Ms. Campbell recalled that once everyone was
in the kitchen, they started talking, saying, AWe=re Aryan Circle@
and their name and ranks.  Again,
Appellant did not raise an objection to the mention of purported gang
affiliation.  

We first consider
whether Appellant=s
continuing or running objection preserved error on admission of the above
testimony.  In order to preserve a
complaint for appellate review, the record must show that the complaining party
presented to the trial court a timely request, objection, or motion, stating
the specific grounds for the ruling sought from the trial court unless the
specific grounds were apparent from the context, and obtained an adverse
ruling.  See Tex.R.App.P. 33.1(a)(1).  The Arunning
objection@ is an
exception to the rule that a party must continue to object and obtain a ruling
for each instance of inadmissible evidence. 
See Ethington v. State, 819 S.W.2d 854, 858-59 (Tex.Crim.App.
1991).  A request for a running objection
is considered timely and preserves error so long as it does not encompass too
broad a subject matter over too broad a time or over different witnesses.  Sattiewhite
v. State, 786 S.W.2d 271, 283 n.4 (Tex.Crim.App.
1989), cert. denied, 498 U.S. 881, 111 S.Ct.
226, 112 L.Ed.2d 181 (1990); Goodman v. State, 701 S.W.2d 850, 863 (Tex.Crim.App. 1985), overruled in part on other grounds
by Hernandez v. State, 757 S.W.2d 744, 751-52 n.15 (Tex.Crim.App.
1988).  








In this case,
Appellant requested a continuing objection to the mention of gang affiliation
during Mr. Rodriguez=s
testimony without requesting that his objection extend to all witnesses
testifying on the same subject matter.  See
Sattiewhite, 786 S.W.2d at 283 n.4 (running objections
may preserve error, but must be exercised with caution).  Appellant did not renew his continuing
objection with respect to State witnesses Jessica Vasquez and Charisa Campbell. 
The record does not reflect that the trial court understood or expressly
permitted the continuing objection to apply to all witness testimony about
Appellant=s
statements regarding gang affiliation. 
Therefore, the court=s
ruling during Mr. Rodriguez=s
testimony did not apply to the admission of similar testimony introduced by
other witnesses.  Appellant=s failure to object to testimony by Ms.
Vasquez and Ms. Campbell regarding the same evidence waived his objection to
Mr. Rodriguez=s
testimony.  See Rogers v. State,
853 S.W.2d 29, 35 (Tex.Crim.App. 1993)(error waived as to improperly admitted evidence if same
evidence is brought in later without objection); Goodman, 701 S.W.2d at
863.  Appellant has failed to preserve
the alleged error.  Issue One in
Appellant=s
supplemental brief is overruled.

Ineffective
Assistance of Counsel for Failure to Request Limiting Instructions

In Issue Two of
his supplemental brief, Appellant contends he was denied effective assistance
of trial counsel because his counsel failed to request limiting instructions in
the jury charge regarding testimony that Appellant was a member of a gang and
further limiting instructions regarding Appellant=s
having been in the Apen.@ 









In reviewing
Appellant=s
ineffective assistance claim, we apply the standard of review set forth in Strickland
v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052,
2064, 80 L.Ed.2d 674 (1984) as discussed above in this opinion.  Appellant argues that it is apparent from
trial counsel=s
objections to admission of testimony about gang membership and testimony
regarding him having been in the penitentiary that his counsel was aware of the
extremely prejudicial effect this testimony would have on the jury, yet he
failed to request a limiting instruction on these matters.  However, we find there is nothing firmly in
the record to determine the trial counsel=s
reasoning for not requesting certain limiting instructions nor is there any
indication as to what limiting instructions would have been appropriate for
submission to the jury.  Any allegation
of ineffectiveness must be firmly founded and affirmatively demonstrated in the
record to overcome the strong presumption that counsel=s
conduct falls within the wide range of reasonable professional assistance.  Thompson, 9 S.W.3d at 813; see
Jackson, 877 S.W.2d at 771.  We do
not speculate as to the reasons for counsel=s
actions where the record is silent as to counsel=s
trial strategy.  See Jackson, 877 S.W.2d at 771.  We
conclude that Appellant has failed to show that trial counsel=s performance was deficient such that
it fell below an objective standard of reasonableness.  See Thompson, 9
S.W.3d at 812.  Issue Two of
Appellant=s
supplemental brief is overruled. 

Having overruled
all of Appellant=s issues
for review, we affirm the trial court=s
judgment.

 

February
26, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Appellant asserts six issues for review in his appellate brief and raises two
additional issues in his supplemental appellate brief.  





[2]
We observe that during the charge conference, the State objected to this
language in Count I.  The trial court
agreed, stating that it would Acorrect
that to you before the Charge is read to the jury and let you confirm it.@ 
The court=s charge
was read to the jury, but the record does not show that any corrections were
made.





[3]
Appellant had filed a motion in limine, requesting
that the trial court order the State not to comment, either directly or
indirectly, upon his alleged gang affiliation without first approaching the
bench.